UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL C. ARRIWITE, | Case No. 4:18-cv-00543-DCN |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| SME STEEL CONTRACTORS, INC., SME John Does I-V, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is Defendant SME Steel Contractors, Inc.'s ("SME") Motion for Summary Judgment. Dkt. 24. The Court held oral argument on July 30, 2020, and took the motion under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART SME's Motion.

## II. BACKGROUND

Plaintiff Daniel Arriwite was employed as a welder by SME until his termination on July 3, 2015.

On July 1, 2015, Arriwite was welding materials for the Chumash Hotel & Casino Project. SME employee Ray Carlson instructed Arriwite to move to a different task and weld on a piece of material which had been partially completed by night-shift employees the night before. As he began his work, Arriwite noticed that the weld was being welded with UltraCore 70C – Lincoln Electric Wire ("70c wire"). Based on his knowledge and

experience in the industry, Arriwite knew that 70c wire was a dangerous material that required additional safety measures and specialty equipment in order to safely use it under Occupational Safety and Health Administration ("OSHA") guidelines. Arriwite also knew that 70c wire could cause physical damage to the person using it if welded improperly.

Not seeing any of the requisite safety measures in the immediate area, Arriwite asked other employees where the Personal Protective Equipment ("PPE") was so that he could safely perform the task. Arriwite was provided a paper mask and a fan. He knew these measures were inadequate and expressed concern. He was told to simply return to the Cushing Project. Later, Carlson sent Arriwite home stating there was nothing further for him to do that day.

The following morning, on July 2, 2015, another SME employee asked to switch welders with Arriwite. Not seeing a need, Arriwite declined. Carlson later approached Arriwite about the request. A disagreement ensued.[1] Carlson asked Arriwite to come to the main office and accused him of being insubordinate.

In the main office, SME Human Resource Director, Dave Burgess, and other employees were present. Arriwite was given a direct order to go work on the project requiring 70c wire and told that all necessary safety precautions were being taken in accordance with the Material Safety Data Sheet ("MSDS"). Arriwite refused, stating that the MSDS was inadequate and that the manufacturer's warning label on the boxes of 70c wire outlined more detailed safety measures. SME told Arriwite they follow the MSDS.

---

[1] Arriwite alleges Carlson shouted obscenities at him and physically assaulted him. SME denies these allegations.

Arriwite told SME that OSHA required compliance with the manufacture's warning labels, not the MSDS, and that—if necessary—he would report SME to OSHA for safety violations.

At the conclusion of the meeting, SME sent Arriwite home for the day. Arriwite immediately went to the Shoshone-Bannock Tribes' Tribal Employment Rights Office and informed the safety compliance officer that he would likely be terminated the following day. He also created an OSHA report outlining SME's unsafe use of 70c wire and the attending unsafe working conditions. Arriwite sent the report to OSHA.

The next morning, July 3, 2015, Arriwite arrived at SME and began work. Shortly thereafter, he was again escorted to the office and informed he was being let go. A discussion regarding unemployment benefits followed and Arriwite left the premises.

On July 14, 2015, Arriwite filed a whistleblower claim with OSHA. On July 15, 2015, OSHA investigated Arriwite's allegations. The investigation yielded no violations. Several employees informed Arriwite that SME had concealed its unsafe practices from OSHA during their visit. When Arriwite informed OSHA of this fact, OSHA initiated a second unannounced site visit. During this subsequent visit, OSHA observed numerous code violations regarding the use of 70c wire. OSHA cited SME for these violations— designated as "SERIOUS" violations under OSHA standards—and proposed substantial fines. SME ultimately entered into a settlement agreement with OSHA for reduced penalties and stricter use of PPE.

OSHA later responded to Arriwite's whistleblower complaint and informed him there was insufficient evidence to suggest he'd been terminated for refusing to work in

dangerous conditions and/or for reporting those conditions to OSHA. Arriwite appealed. OSHA denied the appeal.

On December 7, 2018, Arriwite filed the instant action. In his Complaint, Arriwite brings four causes of action: 1) wrongful termination in violation of public policy; 2) negligent infliction of emotional distress; 3) breach of the covenant of good faith and fair dealing; and 4) wrongful discharge. Dkt. 1. After the close of discovery, SME filed the pending Motion for Summary Judgment. Dkt. 24.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). Importantly, the Court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

SME moves for summary judgment on all four of Arriwite's claims. The Court will address each in turn.

Before doing so, however, the Court notes that SME's summary judgment briefs are severely lacking. The Court is not as concerned with the length of SME's briefs—although the substantive arguments comprise just over seven pages—but with the substance. In essence, SME lists Arriwite's claims and then explains the *legal barriers* to those claims. Glaringly absent, however, is the "bridge" between these two things. There are no specific facts and hardly even any mention of Arriwite. The sole citation to *any* discovery is a footnote in SME's reply brief that generically and briefly summarizes certain deposition testimony regarding why SME terminated Arriwite. This footnote comes on the heels of the single case-specific paragraph in all of SME's briefing. Arriwite's termination is the entire substance of this case. Surely such a discussion deserves more than one paragraph and one footnote.[2] At summary judgment, it is the moving parties' burden to show there

---

[2] While Arriwite's brief is a little better, the Court is still left with numerous questions. With such limited discovery, facts, and testimony in the record, it is very difficult for the Court to fairly and accurately

are no disputed facts at issue and that it is entitled to judgment as a matter of law. By in large, SME failed to do that in this case.

The Court turns to the individual claims.

## A. Claim I - Wrongful Termination in Violation of Public Policy

Arriwite's first cause of action is for wrongful termination in violation of public policy. Dkt. 1, at 9. Broadly speaking, Arriwite claims SME wrongfully terminated him because he refused to work in unsafe working conditions and because he told SME he would report those conditions to OSHA.

SME argues that Arriwite's wrongful termination claim should be dismissed for two interrelated legal reasons. First, SME argues Idaho is an "at-will" employment state and it could fire Arriwite for any number of reasons, or even for no reason at all. Second, SME argues that even if there are public policy concerns at play in this case, Arriwite's remedy lies with OSHA (which, in fact, he already utilized and exhausted), and not with the Federal Court.

The Court will address each argument in turn.

### 1. At-will Employment and the Public Policy Exception

SME argues in its motion for summary judgment that Arriwite's wrongful termination claim should be dismissed in light of the fact that Idaho is an "at-will" employment state. Because Idaho employees are at-will, they "may be terminated by [their] employer at any time for any reason without creating liability." *Berrett v. Clark Cty. Sch.*

---

determine if there are facts in dispute.

*Dist. No. 161,* 454 P.3d 555 (Idaho 2019). SME admits that there is a narrow exception to the at-will doctrine—the public policy exception—but asserts this exception does not apply to Arriwite because he was *not* fired for engaging in any type of protected activity. Citing *Berrett*, SME explains that "under the common law, a termination contravenes public policy only where an employee is terminated for engaging in some protected activity. Protected activities include: (1) refusing to commit an unlawful act, (2) performing an important public obligation, or (3) exercising certain legal rights and privileges." 454 P.3d at 569 (internal quotations and citations omitted). Determining what constitutes a public policy is a matter of law. *Id.* SME argues that Arriwite was not engaged in any of the listed protected activities when he was fired and that the only "public policy" that might be implicated in this case relates to OSHA.

Arriwite does not disagree with SME's recitation of applicable law, but counters that an employee's personal safety fits within the general public policy exception in Idaho to at-will employment. In support, Arriwite cites to a case from this district and declares that Judge B. Lynn Winmill held that a person who reported safety concerns (and was subsequently fired) was performing an important public service. *See Weerheim v. J.R. Simplot Co.*, No. CV-05-20-E-BLW, 2006 WL 2435506 (D. Idaho Aug. 22, 2006). Judge Winmill's holding, however, was a bit more nuanced than Arriwite's representation. Judge Winmill did in fact find that reporting safety concerns was an important public policy; however, he made that finding *because there was a specific Idaho statute that required*

*certain safety protocols. Id.* at \*5.[3] Thus, while helpful, *Weerheim* is not squarely on point because Arriwite has not cited a specific Idaho statute requiring general safety in the workplace or protection against retaliation for safety reporting.

That said, Arriwite's contention that general public policy suggests employees should be able to count on safe working conditions and not fear retaliation for raising safety concerns sounds in caselaw. In fact, after the quotation SME cited from *Berrett*—which appeared to limit public policy exceptions to only three areas—the *Berrett* Court went on to explain that Idaho courts had previously found public policy exceptions in a myriad of circumstances, including when an employee was terminated for reporting safety violations. 454 P. 3d at 569.

Furthermore, in *Ray v. Nampa Sch. Dist. No. 131,* the Idaho Supreme Court reversed summary judgment on the plaintiff's wrongful discharge claim, held the plaintiff's allegations that he was fired after raising safety violations fit within the public policy exception, and determined a jury "could come to differing conclusions concerning the reason [he] was fired" (whether for reporting of safety violations or some other reason). 814 P.2d 17, 21 (Idaho 1991).

Thus, the Court does not read the varying Idaho cases cited by SME as narrowly as it does. While "safety concerns," "reporting safety violations," or "choosing between employment and personal safety" are not specifically listed as public policies in any

---

[3] In short, *Weerheim* concerned a mining operation. Idaho Code § 47–1517 mandates that mining companies operate mines "in accordance with all applicable statutes and regulations pertaining to . . . mine safety . . . . " Thus, Judge Winmill found that when plaintiff filed her safety reports, she did so pursuant to a statute that required safety procedures and her subsequent firing was, accordingly, a public policy violation.

decision, it is logical to assume these would fit within the Idaho Supreme Court's definition. Clearly, ensuring safe working conditions for employees is a valid public policy. And while the Court finds such a public policy exception to Idaho's at-will employment scheme, whether SME actually violated that policy is a question of fact that must be submitted to a jury for determination.

2. *Available Remedy*

Second, SME argues that the Idaho Supreme Court has clearly held that when "'the relevant public policy is contained in a statute and the statute provides a remedy the [common law cause of action] of wrongful discharge is not available.'" *Van v. Portneuf Med. Ctr.,* 212 P.3d 982 (2009) (citing 82 Am.Jur. 2D *Wrongful Discharge* § 62 (2009)). According to SME, because OSHA provides a cause of action for anyone claiming he or she was terminated or discriminated against in violation of OSHA, Arriwite's wrongful termination claim must be dismissed.

This argument is a bit more nuanced than the first—as is Arriwite's response. SME argues that because Arriwite had a statutory remedy available to him—namely that he could (and did) file a complaint with OSHA—he is barred from bringing a common-law cause of action for wrongful discharge before this Court. Arriwite explains, however, that his claim for wrongful discharge is not limited to the allegation that he was fired for stating he was going to report SME to OSHA, but also includes his allegation that he was fired for refusing to work in a dangerous environment.

To begin, the concept that a plaintiff cannot bring a tort claim for wrongful discharge

MEMORANDUM DECISION AND ORDER - 9

in Idaho if a statutory remedy already exists is muddy at best.[4] Some years ago, Magistrate Judge Mikel H. Williams noted that "the published decisions of this court addressing [whether a separate cause of action can be brought when a statutory remedy exists] have not been precisely consistent." *Feltmann v. Petco Animal Supplies, Inc.*, No. 2:11-CV-414-EJL-MHW, 2012 WL 1189913, at *6 (D. Idaho Mar. 20, 2012), report and recommendation adopted, No. 1:11-CV-00414-EJL, 2012 WL 1189910 (D. Idaho Apr. 9, 2012). Judge Williams then contrasted two cases to illustrate this point.

First, in *Ward v. Sorrento Lactalis, Inc.,* 392 F. Supp. 2d 1187 (D. Idaho 2005), the District Court expressed doubt as to whether a separate tort claim for wrongful discharge was cognizable where a statute (specifically the Idaho Human Rights Act) provided a remedy, but nonetheless allowed the claim to proceed past summary judgment. Second, and in contrast, the District Court in *McWilliams v. Latah Sanitation, Inc.,* 554 F. Supp. 2d 1165 (D. Idaho 2008) held that the State of Idaho would likely *not* allow a claim for wrongful discharge in violation of public policy where an adequate statutory remedy (the Americans with Disabilities Act) existed.

This pattern has continued to this day in the District of Idaho as well as in the Idaho Supreme Court: sometimes Idaho courts have permitted a common law tort claim to proceed when there was a statutory remedy; other times, they have not.

As noted above, in 2009, the Idaho Supreme Court in *Van v. Portneuf Medical*

---

[4] It is likely not lost on the reader that this case was argued roughly eight months ago. The Court, frankly, has struggled with these unanswered questions. It even proposed certifying these questions to the Idaho Supreme Court for potential resolution. Dkt. 33. Neither party, however, was keen on the idea of certification. Dkts. 34–35. Upon review, the Court has elected to press forward *without* certification.

*Center* reasoned that a plaintiff could not bring both a Whistleblower claim and a breach of contract claim because Idaho's Whistleblower Act "authorized specific remedies, and therefore its provisions cannot also be used to establish the public policy upon which a breach of at-will employment contract claim is based." *Van*, 212 P.3d at 991. To hold otherwise would "allow plaintiffs to recover twice for the same underlying facts." *Id*. In support, the Idaho Supreme Court cited to the Second edition of the American Jurisprudence encyclopedias and its explanation that when "'the relevant public policy is contained in a statute and the statute provides a remedy the [common law cause of action] of wrongful discharge is not available.'" *Id.*

The following year, United States Magistrate Judge Candy W. Dale favorably cited *Van* and noted that "where a state statute provides remedies for violation of the same public policy, the state common law cause of action no longer is available." *Jones v. Home Fed. Bank*, No. CV09-336-CWD, 2010 WL 996476, at *2 (D. Idaho Mar. 17, 2010)

In 2016, the Idaho Supreme Court appeared to contradict *Van* in a case entitled *Wright v. Ada County* wherein it held that a plaintiff *could* bring a claim for intentional infliction of emotional distress alongside a claim for violation of Idaho's Whistleblower Act because there was no limiting language in Idaho's employment statutes specifically *prohibiting* a separate civil claim for emotional distress—*even if* the alleged conduct also violated the Whistleblower Act. 376 P.3d 58, 501 (2016).

More recently, however, in 2019, the Idaho Supreme Court in *Eller v. Idaho State Police*, explicitly overruled *Wright*. Citing *Van*, the Idaho Supreme Court found that allowing a plaintiff to bring a claim for emotional distress alongside a Whistleblower claim

MEMORANDUM DECISION AND ORDER - 11

would allow for a double recovery because the "specific statutory remedies [of the Whistleblower Act] [] met the public policy concerns" the Idaho legislature was trying to accomplish. 443 P.3d 161, 171 (2019).

This line of cases *seems* to suggest the Idaho Supreme Court has determined that where a statutory remedy exists, a separate tort based on the same behavior cannot stand. That said, *Van*, *Wright*, and *Eller* all involved Idaho's Whistleblower Act. The fact that that particular statute provides a remedy within its four corners seems clear. Further, this Court does not have an issue with the underlying broader *assumption* that most statutes would intentionally provide a remedy for damages within their language—if that was the legislative intent—thus precluding a separate cause of action based on a public policy argument rising out of the same statute. Said another way, because Idaho *has* a Whistleblower Act, and because that act provides certain remedies for violations, a plaintiff cannot bring a separate common law public policy discharge claim based on the same facts.

However, Idaho's Whistleblower Act is not at issue in this case. In fact, no Idaho statute has been implicated; only Federal OSHA. Because Idaho does not have a state OSHA act, this begs the following question: would the opposite logic apply (i.e. would the Idaho Supreme Court allow a separate claim for wrongful discharge) to any OSHA type claim because Idaho does not have a state OSHA statute? Or conversely, would federal OSHA govern and mandate that because it has a remedial scheme aggravated parties can utilize, a separate common law wrongful discharge claim is barred in Idaho. The Court is unaware of any published decision or commentary concerning the Idaho Legislature's position on OSHA. Presumably, in the absence of a state statute, the Idaho Legislature

intended for Federal OSHA to govern. But does that mean they also intended to foreclose state-based common law claims of wrongful discharge? Simply put, the Court has no idea.

Thus, not only does the Court today have to guess what the Idaho Supreme Court would do, but also to an extent what the Idaho Legislature would do. Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction—as does the Court here—apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Idaho substantive law, the Court must apply the law as it believes the Idaho Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

The glaring problem here is there is very little guidance from the Idaho Supreme Court or the Idaho Legislature on this particular topic. Because the Idaho Legislature has not exacted a statutory OSHA scheme that would "displace the common law cause of action," the Court can imagine the Idaho Supreme Court allowing a common law wrongful discharge claim in Idaho. That said, the Court's analysis above *seems* to indicate that the Idaho Supreme Court would hold that if there were a statutory remedy, there can be no common law claim. As noted, ad nauseum, however, Idaho does not have a *state* statute on point, thus the Court must drill another layer down and guess whether the Idaho Supreme Court's analysis extends to federal statutes as well. In other words, the Court must try and determine if the Idaho Supreme Court would view OSHA the same way it views state statutes—in that if OSHA provides a sufficient remedy, no public policy cause of action can exist.

MEMORANDUM DECISION AND ORDER - 13

On this particular question, the Court cannot find any clear answer.[5] Frankly, it cannot find an answer at all. Therefore, it must broaden its search beyond the District of Idaho. The Court has undertaken a lengthy and complicated search in an effort to ascertain whether a common law wrongful discharge claim is permissible in light of—or in spite of—OSHA (or other similar state statues). Unfortunately, the conclusions reached by courts across the country are as varied as they are unique. As one might imagine, most hinge on the specific regime recognized in a particular state.

For example, in addition to OSHA, the state of California has its own agency dedicated to protecting the health and safety of workers ("Cal/OSHA"). In litigation during the 1980s and 1990s, the California Supreme Court—followed by Federal District and Circuit Courts—determined that, even after the passage of Cal/OSHA, a private right of action for employees discharged for reporting health and safety conditions remained and *was not* extinguished by passage of the other statutory remedies. *Hentzel v. Singer Co.*, 188 Cal. Rptr. 159 (Cal. Ct. App. 1982); *Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 863 (9th

---

[5] To be sure, there are some ancillary cases that *hint* at this question, however, none are directly on point or provide a roadmap for the Court to follow today. For example, in *Bryant v. City of Blackfoot*, 48 P.3d 636, 643 (Idaho 2002), the Supreme Court of Idaho dealt with a case alleging numerous causes of action including claims under Title VII, the Americans with Disabilities Act, the Rehabilitation Act (i.e. all federal statutes) *and* a wrongful discharge in violation of public policy claim. The Court made no mention that such was improper. To be sure, that issue was not directly before the Court and the absence of any particular finding is not indicative of approval. However, there is some level of interest because in that case, the Idaho Supreme Court was faced with a similar question as posed by the Court today: specifically, the *Bryant* Court analyzed whether a 42 U.S.C. § 1983 claim could be brought alongside the ADA, Rehabilitation Act, and Title VII claims. As to that question, the Court found that "if a federal statute has its own comprehensive enforcement scheme" it is the "exclusive remedy" and a § 1983 claim *cannot* be brought concurrently. The Court found, however, that while such a determination foreclosed some of the plaintiff's § 1983 claims— namely those claims that overlapped with other federal statutes—it did not diminish stand-alone § 1983 claims based upon rights secured by the United States Constitution. While analogies could be extrapolated from *Bryant* that could help the Court in its quest today, it ultimately finds that the findings therein are too specific as to § 1983 claims to lend any aid in resolving the question of whether the Idaho Supreme Court would look favorably upon a wrongful discharge claim when OSHA is also in play.

Cir.1987) ("A private right of action for wrongful discharge due to safety complaints co-exists with the Cal/OSHA remedial scheme.").[6] The California courts so found based on the concept that because Cal/OSHA did not affirmatory *destroy* the common-law cause of action, it could be pleaded concurrently. *Hentzel*, 188 Cal. Rptr. at 166.

This idea of "absence" determining allowed claims appears to have taken hold in some courts as to the federal question as well. For example, in *Stout v. Gyrodata, Inc.*, the Tenth Circuit found that the plaintiff *could not* bring a stand-alone public policy wrongful-discharge claim (even though the plaintiff never filed anything with OSHA) because *Colorado law* did not specifically allow a separate cause of action where a statute such as OSHA provided a remedy. 560 F. App'x 765, 766 (10th Cir. 2014).

The opposite idea—that there must be affirmative permission granted (either legislatively or judicially) to bring a common-law wrongful discharge cause of action—also finds support in caselaw. For example, in *Avery v. Joint Twp. Dist. Mem'l Hosp.*, the Sixth Circuit found that the state of Ohio *would allow* a wrongful discharge claim in addition to a statutory cause of action because Ohio's Supreme Court had specifically held that a plaintiff *could* maintain a common-law tort for wrongful discharge even after having filed a complaint with OSHA. 286 F. App'x 256, 263 (6th Cir. 2008). Interestingly, however, around the same time as *Avery*, the Sixth Circuit also held that a plaintiff in Kentucky *could not* bring a separate claim for wrongful discharge because *under Kentucky law* both the federal OSHA statute and the Kentucky OSHA statue provided a specific

---

[6] Because these cases are somewhat dated, the Court does not know if this presumption still exist in California.

remedy and could not be supplemented with other claims. These two competing outcomes from the Sixth Circuit reinforce the idea that specific state regimes are determinative of whether the two claims can co-exist.[7]

Still other courts have taken a broader, more "purpose-based" approach to the question. In *Beck v. CNO Fin. Grp., Inc.*, a Federal District Court in Pennsylvania recently found that while OSHA (and a relevant state statute) provided avenues for retaliation type claims, *neither foreclosed a common law wrongful discharge claim* because Congress never intended those administrative remedies to be the sole way for aggrieved persons to remedy discriminatory conduct. No. CV 17-4300, 2018 WL 2984854, at *4 (E.D. Pa. June 14, 2018).

Even having reviewed other districts and circuits and their approach to this issue, the Court is left with little in the way of persuasive guidance as to what to do in this case.

A few considerations, however, push the Court towards its conclusion today that Idaho *would* likely allow a common law claim for wrongful discharge in an OSHA case. First, most of the cases cited above (in Idaho or elsewhere) noted that the plaintiff had tried to bring two claims: a statutory claim and a common-law claim. The courts then expressed distaste for any "double-recovery." That is not at issue in this case, however, because—as will be discussed below—OSHA does not itself actually provide a private right of action. Only the Assistant Secretary of Labor for Occupational Safety and Health can bring a claim. Therefore, it stands to reason that the Idaho Supreme Court would find that while a

---

[7] Again, however, the Court is left wanting in this case as neither the Idaho Supreme Court nor the Idaho Legislature has addressed this topic.

plaintiff has an *administrative* avenue for addressing OSHA concerns (including discrimination and discharge), a common law claim must be allowed in litigation because there is no actual private right of action for wrongful discharge.

Notions of equity also support such a finding. For example, if an employee is dependent on the Secretary filing a claim and the Secretary decides not to, that employee is essentially out of luck—and there is no recovery, let alone a double recovery—unless they can bring their own claim.[8]

Moreover, Arriwite does not deny that he filed a claim with OSHA or that his claim could potentially have been resolved in that forum. However, Arriwite makes clear that not only is he relying on the public policy that employees should be able to report safety violations without retaliation, but also upon the public policy that employees should not be forced to work under unsafe working conditions. Said differently, Arriwite argues he is not trying to recover twice for the same conduct—under OSHA and under his common-law wrongful discharge claim—because the issues are different. Yes, Arriwite claims in his complaint that he was wrongfully discharged for "reporting [safety] conditions to OSHA." Dkt. 1, at 9. Critically, however, Arriwite also claims he was wrongfully discharged for "refusing to work under dangerous and harmful conditions." *Id*.[9] This argument finds

---

[8] The Court is not implying that such a remedial scheme is illegal or improper, only that the issue before the Court is more akin to numerous other tort situations that require an exhaustion of available administrative remedies (either at the state or federal level) before turning to litigation. Having exhausted his remedies under OSHA, it seems only fair that Arriwite have the opportunity to litigate his claims in this forum.

[9] To be clear, this is not a situation is which Arriwite is trying to stretch his Complaint to fit the claim. His Complaint clearly articulates his position that "it is in the public interest for Idaho employees to not be required to work under dangerous and harmful working conditions" and that "SME's failure to provide

support in caselaw from this District.

In *Jones v. Home Federal Bank*, the Defendants, citing *Van*—and the proposition that in situations where a statute provides a remedy there is no separate public policy claim—argued that the plaintiff could not bring a state law claim for wrongful discharge alongside a federal Sarbanes-Oxley Act claim. No. CV09-336-CWD, 2010 WL 996476, at *1 (D. Idaho Mar. 17, 2010). United States Magistrate Judge Candy W. Dale found that *Van* was not directly on point as it dealt with specific state statutes and the public policy allegations in that case (*Jones*) were not specifically included in any of the relevant statutes. *Id.* at *2. Judge Dale went on to observe that even though there were statutory avenues for recourse on some of plaintiff's claims, the public policy concerns appeared "broader" than what was codified and might be able to stand on their own at trial. *Id.* at *3. Judge Dale ultimately decided that evidence would have to be presented at trial to determine if the conduct was subsumed within—or separate from—the statutory scheme. *Id.* at *4. Judge Dale further dissuaded any concerns about double recovery, noting "jury instructions and other procedures are available to the Court to eliminate any duplicative recovery" at trial. *Id.*

Arriwite reiterated at oral argument that his public policy claim was wider than just the OSHA violations at SME and included the public policy that employees should not be forced to work in unsafe situations. Insofar as the Court has already found that such a public policy would likely be recognized in Idaho, it likewise finds that Arriwite's claim *is not*

---

proper safety equipment . . . forced [] Arriwite to choose between his own personal safety and obeying the wishes of SME." Dkt. 1, at 9.

barred despite his filing a claim with OSHA.

The Court is not trying to split a hair too finely here. The overall allegations and concerns in this case are all safety related and OSHA provides a statutory remedy for anyone claiming retaliatory discharge in violation of raising safety concerns. Thus, SME's argument that OSHA already provided a remedy is not wholly without merit. However, as stated, Arriwite's claims in this case are broader than just his "OSHA" claims. Were the Court to bar Arriwite from proceeding on this "portion" of his claim, it would be swallowed up in the OSHA claim and Arriwite would be without remedy. The Court finds such an outcome inequitable.

All things considered, the Court finds that Arriwite can state a cause of action for wrongful discharge in violation of public policy based on a broad "safety" policy.

Finally, the Court notes that SME's argument in favor of "summary judgment" on this claim was almost solely legal and more akin to a motion to dismiss. SME devoted a single paragraph in substantive support of its request claiming that Arriwite's safety concerns are unfounded, and that even if they were legitimate, SME fired him because he refused to perform tasks as required, i.e., for insubordination and not for raising safety concerns. [10] Conversely, Arriwite maintains that SME terminated him for raising concerns

---

[10] As will be discussed below, SME argues that Arriwite conceded he was given the opportunity to weld with a different wire (other than 70c) and that he refused to do so (thus supporting the idea that he was being uncooperative and insubordinate). Citing to Arriwite's affidavit (Dkt. 26), SME argues that Arriwite acknowledged he was given "new wire" after refusing to use 70c wire and asked for PPE to keep him safe. The Court disagrees. While Arriwite's testimony at trial will flesh this issue out completely, it seems clear he was actually talking about the 70c wire itself (and his request for PPE) and that SME did not offer him any new or alternative wire to remedy his safety concerns. While the Court does not find support for SME's argument, it is technically a disputed fact and further illustrates that summary judgment is not proper on this claim.

about working conditions, asking for PPE, and refusing to put his personal safety at risk. The true motivation for Arriwite's termination is clearly a question of fact that can only be determined by a jury. Summary judgment is, therefore, inappropriate on Arriwite's first cause of action.

### B. Negligent Infliction of Emotional Distress

Arriwite's second cause of action is for negligent infliction of emotional distress. Dkt. 1, at 10. Arriwite claims that SME caused him severe emotional distress by subjecting him to dangerous working conditions and terminating his employment. *Id.*

In its Motion for Summary Judgment, SME argues that Arriwite's emotional distress claim cannot survive for two reasons. First, SME points out that Idaho Code Section 5-219(4) prescribes a two-year statute of limitation for actions claiming injury to a person and that the Idaho Supreme Court has applied this statute to claims for emotional distress. S*ee, e.g., Johnson v. McPhie*, 210 P.3d 563 (Idaho App. 2009). Because Arriwite was fired almost three and half years prior to bringing suit, SME argues this claim is time-barred. Second, SME claims that Arriwite's emotional distress claims are not recognizable in the employment context based upon prior decisions from this Court.

Arriwite counters that SME failed to plead a statute of limitations defense in its Answer and, accordingly, has waived the right to do so now. To be sure, Arriwite does not dispute that SME did in fact include a statute of limitations defense in its answer, but argues that it is so vague and boilerplate, it cannot satisfy Federal Rule of Civil Procedure 8's pleading standards, is inadequately plead, and should not be considered.

Hearkening to the Court's prior comments about the inadequacies in SME's

briefing, the Court notes that SME's Answer is likewise, vague. It is frankly a prime example of a boilerplate pleading and does not support notions of fair play in litigation. That said, "statute of limitations" is technically pleaded as a defense in SME's Answer. Dkt. 8, at 6. The Court finds that, while scant, SME did plead such a defense and Arriwite was on notice.

Beyond its waiver argument, Arriwite did not brief or argue against the substance of SME's request—likely because little could be said to overcome SME's conclusion. SME is correct that the statute of limitations on emotional distress claims in Idaho is two years. *Johnson*, 210 P.3d 563. From the information available to the Court, it appears Arriwite was fired outside of that timeframe and there is no indication that the statute was tolled for any reason. In short, summary judgment is appropriate on Arriwite's emotional distress claim.

### C. Breach of covenant of good faith and fair dealing

Arriwite's third cause of action is contract-based. Arriwite argues that SME breached the covenant of good faith and fair dealing by failing to take reasonable measures to ensure Arriwite obtained the benefits of his employment. Dkt. 1, at 1.

SME argues it is entitled to summary judgment on Arriwite's third claim because, again, Arriwite was an at-will employee and it did not owe him any duty in regard to his continued employment. *See Jenkins v. Boise Cascade Corp.,* 141 Idaho 233, 108 P.3d 380, 390 (2005) ("[T]he covenant of good faith and fair dealing does not alter the right to fire an at-will employee; that is, the covenant does not create good cause as a requirement.").

Arriwite agrees that the covenant does not create a duty for employers to terminate

at-will employees only for good cause, but argues that what is does create is a reasonable expectation in all employment contracts that the employer will perform their duties and deal fairly with employees who raise valid concerns.[11] One of the duties Arriwite alleges SME had in this case was a duty to look out for the health and safety of its employees. For support, Arriwite points to SME's employee safety handbook. SME counters that Arriwite's complaint never spoke of the employee safety handbook and that bringing it up now in support of this claim is too little, too late.

Arriwite acknowledges that his Complaint does not specifically mention the employee safety handbook and that reliance on the handbook came up during the course of discovery. This fact notwithstanding, Arriwite claims he is entitled to rely on the handbook because the parties have done discovery on it and because it is simply support for his broader proposition that SME beached its common-law duty of good faith and fair dealing. The Court agrees. While specific reference to the handbook early on would have been helpful, it was not required.[12] Arriwite alleged that SME deprived him of certain employment benefits as a result by firing him for raising safety concerns. Dkt. 1, at 11. The question then is whether SME has been able to put forth sufficient evidence that this assertion is not true – i.e. that there are no disputed material facts on this issue and that

---

[11] The Idaho Supreme Court has held that "termination of employment at will in violation of public policy is a contract action which results in contract damages." *Stout v. Key Training Corp.*, 158 P.3d 971, 974 (Idaho 2007).

[12] The Court has said much about SME's "bare" briefing and pleadings in this case. Similarly, Arriwite's Complaint is fairly broad and basic. Now, under *Iqbal*, *Twombly*, and Federal Rule of Civil Procedure 8, a Complaint need not be a fine work of art, but at the very least, it must put the other party on notice of the claims against it so that it can mount a proper defense. Here, while not required, Arriwite could have been more specific in his allegations.

summary judgment is warranted.

On this point, SME contends that they *did*, in fact, try to work with Arriwite when he raised safety concerns about the 70c wire by allowing him to weld with a different type of wire and that he refused. Because he refused, SME contends Arriwite cannot now claim it (SME) breached any type of duty. Simply put, SME alleges it was Arriwite's own fault that he got fired. Citing to Arriwite's declaration (Dkt. 26) SME claimed during oral argument that there is an inference that SME stated Arriwite could use a different wire on the project and that he refused. The Court does not see any such inference in Arriwite's affidavit. To the contrary, there is no indication that SME gave Arriwite the opportunity to weld with a different wire *on that specific* project when Arriwite raised concerns about the 70c wire.

The Court believes what SME means to assert is that it gave Arriwite the opportunity to weld with another wire, i.e. to return to the Chumash Hotel project, after he raised concerns with the 70c wire, and that the following day, when Arriwite refused to trade machines with another employee after being asked to do so, SME's patience was exhausted and it fired him for insubordination. Assuming this is accurate, the Court understands SME's argument.[13]

However, those factual differences are precisely why summary judgment is not appropriate on this claim. There are disputed facts concerning why Arriwite was fired and whether, in firing Arriwite, SME breached its duty of good faith and fair dealing. Arriwite

---

[13] Frankly, this can be the only explanation as SME's interpretation of Arriwite's affidavit does not make logical sense.

has a right to present evidence that SME breached its covenant with him by not abiding by the terms of its contract (i.e. its handbook) and fired him for raising safety concerns. SME also has a right to put on evidence that it did not violate any contractual terms or its handbook, and instead fired Arriwite for insubordination. A jury must then decide. Summary judgment is, therefore, not appropriate on this claim.

### D.  Wrongful discharge

Arriwite's fourth and final cause of action is for wrongful discharge in violation of 29 U.S.C. § 660. SME alleges there is no private cause of action under 29 U.S.C. § 660(c). *Acosta v. Idaho Falls School District No. 91*, 291 F. Supp 3d 1162 (D. Idaho 2017) (noting that 29 U.S.C. § 660(c)(2) does not provide a private right of action beyond the filing of the complaint with the Secretary of Labor);; *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) ("An agency's decision not to take enforcement action [is] presumed immune from judicial review.").

SME's reading of the statue is correct. If *the Secretary of Labor* determines that a violation has occurred, the statute requires that he file a complaint in the appropriate United States District court; however, there is no similar provision for individuals to take up a cause of action for violating Section 660 on the Secretary's behalf. 29 U.S.C. § 660(c)(2). What's more, at oral argument, Arriwite stated that after reading SME's summary judgment brief and researching the appropriate caselaw, he realized SME was correct and that he must abandon his wrongful discharge claim.[14] Accordingly, summary judgment it

---

[14] To be clear, while Arriwite cannot bring a wrongful discharge claim under § 660, he can still bring his common-law wrongful discharge claim as explained above.

appropriate on count four.

## V. CONCLUSION

Many of SME's arguments are legal in nature and would likely have been more appropriate at the motion to dismiss stage. Perhaps this is the reason SME included so few facts and details about *this* case in its motion. That said, the Court can only grant summary judgment on two claims (the emotional distress claim and the wrongful discharge claim) as each appears to be legally foreclosed. The remaining claims (for wrongful discharge in violation of public policy and breach of the covenant of good faith and fair dealing) must go to a jury for determination as there are significant factual issues in dispute.

## VI. ORDER

1.  SME's Motion for Summary Judgment (Dkt. 24) is GRANTED in PART and DENIED in PART. Summary judgment is granted as to Claims II and IV. Summary judgment is denied as to Claims I and III.

2.  The Court will set a scheduling conference as soon as reasonably possible to select a trial date for this matter.

DATED: March 31, 2021

David C. Nye
Chief U.S. District Court Judge