UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DANIEL C. ARRIWITE,<br><br>    Plaintiff,<br><br>v.<br><br>SME STEEL CONTRACTORS, INC., SME John Does I-V,<br><br>    Defendants. | Case No. 4:18-cv-00543-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant SME Steel Contractors, Inc.'s ("SME") Renewed Motion for Judgment as a Matter of Law. Dkt. 85.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons outlined below, the Court DENIES SME's Motion.

## II. BACKGROUND

The underlying facts of this case are well known to both parties and the Court will not repeat them here.[1]

In his Complaint, Arriwite brought four causes of action: 1) wrongful termination

---

[1] For a more in-depth factual history, see Dkt. 36, at 1–4; Dkt. 70, at 2–5.

in violation of public policy; 2) negligent infliction of emotional distress; 3) breach of the covenant of good faith and fair dealing; and 4) wrongful discharge. Dkt. 1. After summary judgment, only Claims I and III remained, and Arriwite proceeded to trial on those claims. Dkt. 36.

A five-day jury trial began on October 25, 2021. At the close of Arriwite's case-in-chief, SME moved for judgment as a matter of law.[2] The Court took the motion under advisement and allowed the matter to proceed to a jury.

Ultimately, the jury found SME did not wrongfully discharge Arriwite in violation of public policy (hereafter "Claim One"), but did find that it had breached the covenant of good faith and fair dealing (hereafter "Claim Two") and awarded Arriwite $80,000 in damages.

SME indicated its intent to renew its Rule 50 motion. The Court and Counsel discussed scheduling—and upcoming holidays—and set a briefing schedule agreeable to all. The parties dutifully filed their briefs, and the matter is now ripe for the Court's consideration.

### III. LEGAL STANDARD

"A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion. Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "If the judge denies or defers

---

[2] Often, this type of motion is referred to as a "directed verdict." *See* Fed. R. Civ. P. 50 advisory committee's notes 1984 (referencing the subdivision's title—"judgment as a matter of law"—but noting that "in the interest of simplicity, the traditional term, 'directed verdict,' is retained.").

MEMORANDUM DECISION AND ORDER - 2

ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Id.*

"[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.*

The "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Harper v. City of L.A.*, 533 F.3d 1010, 1021 (9th Cir. 2008) (citation omitted). The Court "can overturn the jury's verdict and grant such a motion only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (cleaned up). If there is "sufficient evidence before the jury on a particular issue, and if the instructions of law on the issue were correct, then the jury's verdict must stand." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985).

Importantly, "[b]ecause it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Go Daddy Software*, 581 F.3d at 961. "Thus, a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in

its pre-verdict Rule 50(a) motion.'" *Id.* (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

However, Rule 50(b) may be satisfied by an ambiguous or inartful Rule 50(a) motion. *Id.* (citing *Reeves v. Tuescher*, 881 F.2d 1495, 1498 (9th Cir. 1989)). "Absent such a liberal interpretation, the rule is a harsh one." *Id.* (cleaned up). When ruling on a Rule 50(b) motion based on grounds not previously asserted in a Rule 50(a) motion, the Court is "limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice." *Id.* "This exception . . . permits only extraordinarily deferential review that is limited to whether there was *any* evidence to support the jury's verdict." *Id.* at 961–62 (cleaned up).

### IV. ANALYSIS

As a threshold matter, the Court must address the briefing on the current motion. The Court has been frank regarding the briefing throughout this case. *See* Dkt. 36, at 5; Dkt. 36, at 5 n.2. Dkt. 70, at 7. Important and crucial arguments have been dealt with in a cursory manner or even relegated to footnotes. The Court is not opposed to conciseness. But not at the expense of completeness.

A Rule 50 motion is directed at the "evidentiary basis" supporting a claim. Fed. R. Civ. P. 50(a)(1). By its very nature, the motion requires that the Court look at the testimony and evidence presented during trial. It would seem a foregone conclusion, then, that the parties would order copies of the transcript to verify the record, hone any applicable arguments, and present the Court with the fullest picture of where the evidence was, or was not, sufficient. However, neither party did that in this case. Or at least not to a helpful

degree.

The only two transcripts requested from trial were partial transcripts—one of Arriwite's expert Debra Nim's testimony, and one of Arriwite's closing arguments. Dkts. 81–82.[3] *Neither* party requested a copy of SME's original Rule 50 motion[4] and *neither* party requested a copy of Arriwite's testimony. Both sides "quote" Arriwite extensively, but only in the abstract—there is not a single citation to his testimony from trial. This concerns the Court. Once again, the Court is left with only a partial picture of the task at hand and must make a ruling on incomplete information.

To ensure a just outcome, however, the Court has gone out of its way and reviewed the unofficial transcript from trial—specifically the original Rule 50 motion and all of Arriwite's testimony.

Arriwite begins his response to SME's Motion by arguing the Court should dismiss the request outright because SME now argues matters it did not previously raise. The Court disagrees. SME's original arguments during trial were quite broad. Its arguments now are more targeted. Nevertheless, the same issues were raised. What's more, as noted, Rule 50(b) "may be satisfied by an ambiguous or inartfully made motion under Rule 50(a)." *Go Daddy Software, Inc.*, 581 F.3d at 961 (cleaned up). Thus, as a procedural matter, the Court finds SME's Motion proper. Substantively, however, the motion fails.

---

[3] Very little from either of these transcripts was included in the briefs on the present motion and is only marginally relevant to the broader question presented to the Court today.

[4] When attacked by Arriwite about the scope of its original Rule 50 motion, SME admitted that it "has not requested a transcript of the Rule 50(a) Motion," but that its "counsel's notes reflect [what occurred]." Dkt. 87, at 2. The fact that a transcript was not originally requested is curious, but the failure to do so when under direct attack is all the more surprising.

MEMORANDUM DECISION AND ORDER - 5

SME focuses the bulk of its briefing on factual disputes and *its* interpretation of how certain facts should be viewed by the Court (or a jury).[5] But that is not the standard. At this stage, the Court *cannot* "make credibility determinations or weigh the evidence." *Reeves,* 530 U.S. at 150. It must view the evidence in "the light most favorable to the nonmoving party"—Arriwite—and will not overturn the jury's findings unless the evidence presents "only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs* 443 F.3d at 1062. Arriwite disputes SME's interpretation of the facts and testimony at every turn. The Court must view these facts in Arriwite's favor at this stage.

That said, the Court must dissect SME's primary argument about the covenant of good faith and fair dealing to ensure the facts—whatever those might be—provide an evidentiary basis the jury could have relied upon in reaching its conclusion.

SME begins by noting that, in Idaho, "courts have cautioned against using [the covenant of good faith and fair dealing] to place limits on the termination of an at-will employee," and that the covenant "does not create good cause as a requirement" for firing an at-will employee. *Kamdem-Ouaffo v. Idahoan Foods, LLC*, 243 F. Supp. 3d 1130, 1136 (D. Idaho 2017). This is an accurate reading of the law. And Arriwite does not disagree. He has always recognized he was an at-will employee. His contention, however, is that

---

[5] For example, SME argues the real reason it fired Arriwite was because he was insubordinate in his refusal to move machines, *not* because he brought up safety concerns. Arriwite maintains that he was called into the supervisor's office on more than one occasion—in the days leading up to his termination and on that day—and that both his safety concerns *and* his decision not to change machines were discussed. SME would have the jury believe these two matters are unrelated and that it lawfully fired Arriwite for insubordination. Arriwite argued, however, that the events were related, and that SME's insubordination argument is a ruse to cover its real reason for firing him (that he raised safety concerns). That determination, however, was up to jury based upon the testimony and evidence at trial. SME's interpretation of the facts at this point is, frankly, immaterial.

MEMORANDUM DECISION AND ORDER - 6

SME breached its duty by failing to deal fairly with him under the terms of his employment contract and SME's own employee handbook. As the case SME cited above explains, the covenant of good faith and fair dealing "requires parties to perform, in good faith, the obligations existing under the contract," and a breach occurs when "a party violates, qualifies, or significantly impairs any benefit or right of the other party under an employment contract, whether express or implied." *Id*. (cleaned up).

Thus, the question before the Court is whether anything was presented at trial which would allow a jury to find that SME violated the terms of its contract with Arriwite.

SME cites heavily from the handbook—which was offered and admitted during trial—and avers that nothing therein lends itself to the conclusion that SME violated any agreement it had with Arriwite. SME cites to the employee conduct section of the handbook and argues that even assuming Arriwite disagreed with his superiors about using certain welding wire he was required to "follow the supervisor's instruction, if safe to do so, and may report the situation at a later time." Dkt. 85-1, at 9 (underlining in original). Conspicuously, SME underlined the entire sentence *except* for the portion that applies to the circumstances at hand. As a factual matter, Arriwite contests that when he was instructed to use a type of wire he understood to be dangerous, it was not, in fact, "safe" to follow his supervisor's instructions. Arriwite's whole theory of the case rests upon his understanding that SME should have engaged with him when he raised this concern instead of sending him home, disciplining him, or firing him. Again, SME hotly disputes that any of this was the impetus for firing Arriwite, but that is precisely the point. This is, by all accounts, one of the main disagreements in this case: whether SME treated Arriwite fairly

MEMORANDUM DECISION AND ORDER - 7

when he raised safety concerns—under the law and under the terms of its handbook (actual or implied). Clearly the jury thought SME had not treated Arriwite fairly under the terms of his employment. Whether SME or the Court agrees with that conclusion is immaterial. The question is whether there are facts in evidence that could lead to such a result. Clearly there are.

Arriwite testified about the employee handbook and his understanding of the policies. Counsel questioned Arriwite at length about how he tried to utilize SME's policies and procedures when confronted with what he perceived to be a dangerous situation. He testified he did not feel safe using the 75C wire he had been assigned without proper personal protective equipment. He testified he alerted supervisors to his concerns. The fact that SME engaged, at least to some degree, in a discussion about the safety situation illustrates their recognition that the matter needed to be addressed. This then, is where the parties diverge. Arriwite argues his raising concerns ultimately led to his firing. SME, on the other hand, asserts his voicing concerns started (or continued) a pattern of insubordinate behavior—which resulted in his lawful termination.

And lest it be overlooked, SME presented evidence *contrary* to that presented by Arriwite. SME argued the wire in question was not dangerous[6] and elicited testimony that it was Arriwite's failure to move machines that resulted in his termination, not his alleged

---

[6] To this day, this issue is still confusing. The Court and the parties were initially confused about which wire—70C or 75C—was at issue. It appears Arriwite took issue with the 75C wire. He also testified that he never used 70C wire either. SME alleges he did use 70C wire and that because the two wires are substantially the same, he should not have had any issue using the 75C wire. Again, there is confusion regarding when, if at all, Arriwite used 70C wire. This disputed fact notwithstanding, the parties both agree that Arriwite's expert, Debra Nims, stated that *both* 70C and 75C wires were dangerous and required proper protective equipment. Dkt. 81, at 19–21.

MEMORANDUM DECISION AND ORDER - 8

safety concerns.

In sum, there was evidence on both sides to support or reject the claims at issue. Open questions were present that warranted a factfinder's resolution. Ultimately, the jury weighed all of the evidence and found in favor of SME on Claim One, and in favor of Arriwite on Claim Two. Such was a possible outcome based upon the evidence.

And specifically, as it relates to Claim Two—the subject of SME's renewed motion—the jury evidently felt SME did not follow its handbook and determined certain monetary damages were necessary to make Arriwite whole. Because there was evidence in the record to support the conclusion that SME deviated from the language of its handbook, some of which is discussed above, the Court will not overturn the jury's determination.

## V. CONCLUSION

In sum, SME may still disagree with some of Arriwite's factual assertions and interpretations. There is nothing wrong with that. But, the question is not *whose* version of the facts is to be believed—although the Court defers to Arriwite as the non-moving party at this stage—but whether *any* interpretation of those facts could lead to the jury's outcome. The Court finds that there is sufficient evidence for the jury to reach the conclusion that SME violated its duty of good faith and fair dealing.

While it may be "possible to draw a contrary conclusion" to that reached by the jury in this case, *Harper*, 533 F.3d at 1021, SME has not carried its burden of showing the evidence presented at trial could result in "only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs* 443 F.3d at 1062. The Motion must

be DENIED.

## VI. ORDER

IT IS HEREBY ORDERED:

1. SME's Renewed Motion for Judgment as a Matter of Law (Dkt. 85) is DENIED.

DATED: July 22, 2022

_____
David C. Nye
Chief U.S. District Court Judge